**THETFORD PROPERTIES IV LIMITED PARTNERSHIP, on behalf of itself and as representative of the class defined herein; Baker Street Associates, on behalf of itself and as representative of the class defined herein, Plaintiffs–Appellants,**

v.

**U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT; Jack Kemp, Secretary, Department of Housing and Urban Development, Defendants–Appellees.**

No. 89–1778.

United States Court of Appeals, Fourth Circuit.

Argued April 5, 1990.

Decided July 2, 1990.

Charles L. Edson (argued) (J. Robert Kirk, Harry J. Kelly, Kelley, Drye & Warren, Washington, D.C., Mark C. Kirby, Faison & Brown, Raleigh, N.C., Martin S. Kaufman, Douglas Foster, Atlantic Legal Foundation, Inc., New York City, on briefs), for plaintiffs-appellants.

John Samuel Koppel (argued) (Stuart M. Gerson, Asst. Atty. Gen., Michael Jay Singer, Civil Div., U.S. Dept. of Justice, Washington, D.C., Margaret P. Currin, U.S. Atty., Raleigh, N.C., Gershon M. Ratner, Associate Gen. Counsel for Litigation, Angelo Aiosa, Asst. Gen. Counsel, Richard M. Price, Office of Litigation, Dept. of Housing and Urban Development, Washington, D.C., on briefs), for defendants-appellees.

Before RUSSELL, WIDENER, and HALL, Circuit Judges.

K.K. HALL, Circuit Judge:

Thetford Properties IV Limited Partnership ("Thetford") and Baker Street Associates ("Baker") appeal from the district court's order dismissing their claims for failure to exhaust their administrative remedies. Finding no error, we affirm.

## I.

### A. *Statutory Background*

In 1961, Congress incorporated into § 221(d)(3) of the National Housing Act a program to encourage the private development of low- to moderate-income ("lower income") housing. 12 U.S.C. § 1715*l*(d)(3). The program, administered by the Department of Housing and Urban Development ("HUD"), made insured low interest 40-year mortgages available to developers to facilitate the construction and maintenance of qualified housing. Pursuant to regulatory agreements between HUD and the developers, the savings from these mortgages had to be passed on in the form of lower rents for the tenants, who were required to be of lower income. These agreements, however, as well as the mortgages themselves, expressly allowed the owners of the properties, without HUD's prior consent, to prepay their mortgages at the end of 20 years, thereby terminating HUD insurance and withdrawing the properties from the program. *See* 24 C.F.R. § 221.524(a) (1989). The property owners would then be free to sell or rent their properties on the open market.

In 1987, when it became evident that many property owners intended to prepay their mortgages and withdraw from the program, Congress acted to prevent the impending lower income housing shortage by enacting the Emergency Low Income Housing Preservation Act of 1987 ("Act"), 12 U.S.C. § 1715*l* note. The Act conditioned the property owners' right to unilaterally prepay and withdraw from the program. Now, a property owner who wishes to prepay must file a notice of intent to prepay with HUD. *Id.* at § 221(a). Upon receipt of the notice, HUD must provide the property owner with sufficient information to complete and file a "plan of action." *Id.* at § 223(a). A plan of action is a detailed submission in which the property owner must address, *inter alia,* the effect of prepayment on low income affordability restrictions, the availability of any replacement state or local assistance, and the impact of prepayment on existing tenants and on the supply of lower income housing in the community as a whole. *Id.* at § 223(b). Upon receipt of an acceptable plan of action, HUD is authorized, in certain circumstances, to offer property owners economic incentives to keep their properties in the program. *Id.* at § 224. If offered, the incentives are to be sufficient to ensure that the property owners receive a "fair return" on their investment. *Id.* at §§ 224(b), 225(b). If a property owner is not enticed by HUD's incentives, prepayment and withdrawal from the program are granted if HUD finds that such action "will not materially increase economic hardship for current tenants ... [or] involuntarily displace current tenants (except for good cause) where comparable and affordable housing is not readily available." *Id.* at § 225(a)(1); *see· also* § 225(a)(2) (further necessary findings).

By its own terms, the Act was to expire two years after its effective date, on February 5, 1990. *Id.* at § 203(a). The expiration date was recently extended by Congress until September 30, 1990, through the Department of Housing and Urban De-velopment Reform Act of 1989. Pub.L. No. 101–235, 103 Stat.1987 (1989).

## B. *The Instant Dispute*

Thetford owns a multi-family housing project in Raleigh, North Carolina, which participates in the program. Baker owns a participant project in Dover, New Jersey. Thetford filed its notice of intent to prepay on September 21, 1988; Baker filed on May 9, 1988. Although HUD gave both parties the necessary information to file a plan of action, neither has taken any steps to do so. On October 25, 1988, appellants filed this action in district court, on behalf of themselves and a class of property owners who are unable to prepay because of the Act.[1] They sought a declaration that the Act's abrogation of their unconditional contractual right to prepay their federally-insured mortgages violates due process. The district court dismissed the complaint on exhaustion grounds. This appeal followed.

## II.

■ Appellants urge us to find that the unique circumstances of their case remove them from the long-standing rule that a litigant must exhaust his administrative remedies before seeking redress in federal court. They argue that where, as here, the only issue in dispute is the constitutionality of a statute, exhaustion is not required because an administrative agency cannot make such a constitutional determination. They further contend that exhaustion should not be required because to make them vindicate their contractual rights through the administrative process is part and parcel of the due process violation caused by the loss of their unconditional right to prepay. They also contend that the Act's administrative procedures are inadequate and, consequently, that they should not be burdened by having to see them through. Lastly, they maintain that their submission to the Act's administrative procedures would be futile because, under the existing regulations, they cannot quali-

---

1. Although filed as a class action, appellants never moved to certify the class. Thus, the only property owners directly affected by the outcome of this case are appellants.

fy for prepayment. We address these contentions seriatim.

We begin by acknowledging the "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Meyers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938). The exhaustion requirement serves many purposes, *see, e.g., McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969), not the least of which are to allow an agency the opportunity to use its discretion and expertise to resolve a dispute without premature judicial intervention and to allow the courts to have benefit of an agency's talents through a fully developed administrative record. We find these prudential considerations no less weighty when an administrative litigant raises a constitutional challenge to a statute which an agency is charged with enforcing.

First, as we made clear in *American Fed. of Gov't Employees, AFL–CIO v. Nimmo*, 711 F.2d 28, 31 (4th Cir.1983), "exhaustion is particularly appropriate when the administrative remedy may eliminate the necessity of deciding constitutional questions." *See also Aircraft & Diesel Equip. Corp. v. Hirsch*, 331 U.S. 752, 772, 67 S.Ct. 1493, 1503, 91 L.Ed. 1796 (1947); *Public Utilities Commission of California v. United States*, 355 U.S. 534, 539–40, 78 S.Ct. 446, 450–51, 2 L.Ed.2d 470 (1958) ("If . . . an administrative proceeding might leave no remnant of the constitutional question, the administrative remedy plainly should be pursued.") This principle is nothing more than a necessary corollary to the "fundamental rule of judicial restraint" that a court "ought not to pass on questions of constitutionality unless such adjudication is unavoidable." *Jean v. Nelson*, 472 U.S. 846, 854, 105 S.Ct. 2992, 2997, 86 L.Ed.2d 664 (1985). Although appellants contend otherwise, both the statute and the implementing regulations make clear that, under certain circumstances, HUD has the authority to grant them the ultimate economic relief that they seek—prepayment

and withdrawal from the program. *See* 12 U.S.C. § 1715*l* note § 225; 24 C.F.R. § 248.221. Further, if they choose to remain in the program, the statute also allows HUD to offer appellants economic incentives to give them a "fair return" on their investment. 12 U.S.C. § 1715*l* note § 224; 24 C.F.R. § 248.231. Thus, requiring exhaustion here may very well lead to a satisfactory resolution of this controversy without having to reach appellants' constitutional challenge.

Even if HUD and appellants cannot resolve this dispute, exhaustion will still have served vital purposes. Aside from the readily apparent benefits of a fully developed administrative record, the reviewing court will also have the considerable benefit of the agency's interpretation of the Act as applied to appellants' plans of action.

The Act was intended by Congress as a temporary measure to deal with the intractable problem of affordable housing for lower income Americans. *Orrego v. HUD*, 701 F.Supp. 1384, 1386–88 (N.D.Ill.1988). It attempts to balance this concern against the property owners' contract right to prepay by allowing for prepayment whenever HUD determines that certain criteria have been met. HUD's application of the Act to appellants will necessarily involve consideration of these competing concerns and interpretation of the very prepayment provisions which appellants challenge. These interpretations will be due great deference, *e.g., Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–45, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984), and will provide valuable insight as to the Act's constitutionality in practice. Thus, even though HUD cannot rule on the Act's ultimate constitutionality, exhaustion will nonetheless be an important step if a reviewing court must make that determination.

Consequently, we must reject appellant's argument that, as a general rule, exhaustion is not necessary where administrative litigants raise constitutional challenges. Of course, in the rare case when a statute is patently unconstitutional or an agency has taken a clearly unconstitutional posi-

tion, exhaustion may not be required. Where it is clear that resort to administrative remedies would be incapable of affording due process, there is certainly no need to exhaust. *Aircraft & Diesel*, 331 U.S. at 774, 67 S.Ct. at 1504. However, this case is not nearly so extreme. The constitutionality of the Act has been upheld by at least one court, *Orrego, supra;* and HUD has made every reasonable effort to deal with appellants fairly.

In sum, the constitutional focus of appellants' claim does not relieve them of their obligation to pursue and exhaust their remedies before HUD.

### III.

■ Appellants' argument that exhaustion should not be required because submission to the administrative process is part of the alleged due process violation confuses the issue. The gravamen of appellants' due process challenge is not the procedure for approving prepayment itself, but rather is Congress' ability to constitutionally condition prepayment at all. Appellants' claim, as we understand it, is that, in an effort to shift the cost of housing lower-income Americans to appellants, Congress has repudiated its contractual obligation to allow prepayment and withdrawal from the program in violation of the due process clause of the Fifth Amendment. *See Perry v. United States*, 294 U.S. 330, 55 S.Ct. 432, 79 L.Ed. 912 (1935); *Lynch v. United States*, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934). Thus, this is not a case where the adequacy of the administrative remedy is "for all practical purposes identical" to the merits of the underlying claim, such that exhaustion is not required.

*See Gibson v. Berryhill*, 411 U.S. 564, 575, 93 S.Ct. 1689, 1696, 36 L.Ed.2d 488 (1973). The adequacy of this procedure is an issue wholly separate from the constitutionality of Congress' conditioning of prepayment. Furthermore, as previously discussed, remedies before HUD may very well ameliorate any damages suffered because of this alleged constitutional violation. Consequently, appellants are not relieved of the exhaustion requirement.[2]

### IV.

■ Neither do we find support for appellants' contentions that HUD's procedures are inadequate or that resort to them would be futile. To be sure, no litigant is obliged to exhaust inadequate administrative procedures. *Greene v. United States*, 376 U.S. 149, 163, 84 S.Ct. 615, 623, 11 L.Ed.2d 576 (1964); *Sanders v. McCrady*, 537 F.2d 1199, 1201 (4th Cir.1976). Appellants, however, have made no showing that the remedies made available by HUD are inadequate. As discussed above, the administrative process is certainly adequate in that it can give appellants what they ultimately seek, prepayment and withdrawal from the program. And, unlike the situation in *Coit Independence Joint Venture v. Federal Savings and Loan Insurance Corp.*, 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989), where the FSLIC's process for adjudicating claims in effect denied claimants their day in court by imposing no well-defined time limits for agency action, HUD's regulations demand prompt processing of submitted plans of action. *See,* 24 C.F.R. §§ 248.212(c), 248.215, 248.-219(a).[3]

---

**2.** The Supreme Court's holding in *Public Utilities* is not to the contrary. In ruling that the federal government was excused from exhausting the state agency's administrative remedies, the Court stated that "where the only question is whether it is constitutional to fasten the administrative procedure onto the litigant, the administrative agency may be defied and judicial relief sought as the only effective way of protecting the asserted constitutional right." *Id.* 355 U.S. at 540, 78 S.Ct. at 451. That statement, however, was expressly conditioned on the Court's finding that proceedings before the state agency could not possibly obviate the need to

decide the constitutional question. *Id.* at 539, 78 S.Ct. at 450. As demonstrated above, the proceedings contemplated by the Act most certainly do present that possibility. Consequently, in the words of the *Public Utilities* Court, "the administrative remedy plainly must be pursued." *Id.* at 539, 78 S.Ct. at 450.

**3.** Appellants rely on the fact that as of September 1989, HUD had approved only 3 of 32 submitted plans of action, and allowed only one prepayment to argue that this process is inadequate. *Only Three Plans of Action Approved Under 1987 Law,* 17 Housing & Dev. Rptr. 398.

Appellants' claim that resort to the administrative process would be futile because they cannot meet the Act's requirements for prepayment is equally meritless. Appellants are simply in no position to claim the futility exception to the exhaustion requirement. Absent a clear showing that an administrative agency has taken a hard and fast position that makes an adverse ruling a certainty, a litigant's prognostication that he is likely to fail before an agency is not a sufficient reason to excuse the lack of exhaustion. *Randolph–Sheppard*, 795 F.2d at 105–06; *Rhodes v. United States*, 574 F.2d 1179, 1181 (5th Cir. 1978). While HUD cannot allow appellants to unconditionally prepay and withdraw from the program, it is possible that prepayment on conditions acceptable to appellants may be allowed. Further, appellants' own evidence shows that HUD has approved at least three plans of action and one prepayment. To allow appellants to avoid the administrative process on their unsupported allegation of futility would allow the futility exception to swallow the exhaustion rule.

## V.

In sum, we find no reason why appellants should not fully litigate their claims before HUD. Accordingly, the district court's order dismissing the case for failure to exhaust administrative remedies is affirmed.

AFFIRMED.

---

This evidence does not prove the point. Appellants have made no showing of undue neglect or intentional delay on the part of HUD. It is clear that, *absent such extraordinary circumstances,* the usual time and effort to exhaust an administrative remedy is no justification for failing to pursue that remedy. *Randolph–Sheppard Vendors of America v. Weinberger,* 795 F.2d 90, 108 (D.C.Cir.1986) (discussing irreparable injury exception to the exhaustion requirement).